IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACEY POOLE | ) | No. |
| Plaintiff | ) | |
| | ) | CIVIL COMPLAINT   23-1843 |
| vs. | ) | |
| COUNTY OF ALLEGHENY, COUNTY EXECUTIVE RICHARD FITZGERALD | ) | |
| Defendant. | ) | |

Filed on Behalf of:
Plaintiff

Counsel of Record for
This Party:

James L. Welsh, III, Esquire
PA I.D. #58790
THE WELSH LAW GROUP LLC

3875 Franklintowne Court
Suite 130
Murrysville, PA  15668
724-519-2122

e-mail:
jwelsh@thewklaw.com

JURY TRIAL DEMANDED

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACEY POOLE, | ) | No. |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| COUNTY OF ALLEGHENY, COUNTY | ) | |
| EXECUTIVE RICHARD FITZGERALD | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## CIVIL COMPLAINT

Plaintiff, Stacey Poole, by and through the undersigned counsel brings this action seeking legal and equitable relief and in support alleges the following:

### JURISDICTION

1. The Jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(t)(l); 42 U.S.C. §1981A and 28 U.S.C. §1331.

2. Plaintiff has satisfied all administrative prerequisites to suit under Title VII because:

   a. Plaintiff originally filed a federal complaint along with a Plaintiff that filed a Charge of Discrimination with the Equal Employment Opportunity Commission and cross-filed with the Pennsylvania Human Relations Commission.

   b. The EEOC issued a Notice of Right to Sue.

   c. This Complaint is filed within 90 days of receipt of that notice.

   d. Or, Plaintiff is entitled to piggyback on the Complaint filed by Shane Chesher, as originally filed.

   e. Or, in the alternative, Plaintiff is excused from filing with the EEOC and/or the PHRC because Defendant terminated other employees for similar reasons at the same time Defendant terminated Plaintiff's employment. Because some of those employees filed charges with the EEOC and the PHRC, Plaintiff may piggyback their claims alleged in this

1

      lawsuit pursuant to the single-filing rule.

   f. In the alternative, Plaintiff is entitled to an exemption or exception because their claims arise "out of" or are "reasonably related" to claims that similarly situated Plaintiffs previously filed with the EEOC and/or the PHRC.

   g. Defendants clearly knew that all Plaintiffs who filed for a religious exemption or medical exemption which were wrongfully denied were adequate put Defendant on notice that Defendants' vaccine mandate would be challenged as a violation of Title VII and/or the PHRA and/or the ADA.

3. Defendant, County of Allegheny, has a business address of 920 City-County Building, 414 Grant Street Pittsburgh PA 15219. Defendant regularly conducts business in Pennsylvania and was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

4. Defendant, Rich Fitzgerald, is the County Executive of Allegheny County.

## NATURE OF ACTION AND FACTUAL BACKGROUND

5. This is an action brought under 42 U.S.C. §1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000 et seq., and the laws of the Commonwealth of Pennsylvania, to hold Allegheny County, via its policymaker, County Executive Rich Fitzgerald, for violations of Plaintiff's fundamental and constitutional right to equal protection under the law and the free exercise of her medical autonomy and to be free from discrimination in employment.

6. Plaintiff seeks declaratory relief and compensatory damages, as well as reinstatement, nominal, actual, and punitive damages, and other remedies for harms arising from the *ultra vires* announcement of Defendant County Executive Rich Fitzgerald that all county

employees must be vaccinated for COVID-19 on or before December 1, 2021, or their employment would be terminated (hereinafter "Fitzgerald Mandate"), and for the discriminatory and unlawful implementation of the Fitzgerald mandate.

7. The Fitzgerald Mandate *ab initio,* violated fundamental constitutional rights, both facially and as applied, and arbitrarily and capriciously discriminated against employees with pre-existing medical conditions to vaccination- even though the employees pose no direct threat to others because of their medical conditions - and placed unconstitutional conditions on employment.

8. In implementing the Fitzgerald Mandate, Allegheny County adopted facially unconstitutional standards and policies, subjecting Plaintiff and thousands of other employees to, per se, unconstitutional medical harassment.

9. Defendant Fitzgerald sanctioned and encouraged this discrimination. In public comments, he stated:

   a. Folks who are not vaccinated are going to be isolated from society.

   b. It becomes very difficult for the unvaccinated to really get full employment and quite frankly function and what's happening in society right now.

   c. Week after week, we'll see how safe they are, how effective they are, and how dangerous it is not to be vaccinated.

   d. These vaccine cards are something people are going to be showing a lot of.

   e. However long you are working at your place of employment, to know that the folks that are coming in contact with you are vaccinated. So, you know you're not going to be taking that illness back to your family or getting yourself sick.

    f.  We feel very comfortable that this can be a condition of employment ... and obvious this can go to court.

10. Under Defendant Fitzgerald's openly discriminatory policy, Plaintiff, with pre-existing clotting disorders, was singled out for discriminatory treatment by the County.

11. In addition to being discriminatory, *ultra vires,* and violative of constitutional rights, the Fitzgerald Mandate was irrational.

12. COVID-19 vaccine mandates did not stop the spread of SARS-CoV-2 in the workplace. The vaccine may blunt the severity of the disease, but the evidence does not support an assertion that the COVID-19 vaccine stops infection with and transmission of SARS-CoV-2 to others.

13. Moreover, far less invasive measures were available to ensure public safety than forcing Plaintiff to violate her medical autonomy or lose her job.

14. The Fitzgerald Mandate is an outlier. At no time did the Commonwealth of Pennsylvania require its employees to be vaccinated as a condition of employment.

15. The Fitzgerald Mandate was also overbroad. There was no option to get tested in lieu of vaccination. Nor was natural immunity recognized, even though the data overwhelmingly shows that natural immunity is more robust and durable than vaccine immunity. Moreover, neither remote employees nor those who could easily work outside were provided exemptions.

16. Alternatively, the Fitzgerald Mandate was underinclusive. Unvaccinated civilians were permitted to enter buildings and conduct business with County employees. If the unvaccinated could safely interact with County employees each day, there was no reason why the small percentage of staff with a medical condition preventing vaccination could not also be safely accommodated.

17. Excluding unvaccinated staff by termination did not impact mitigating the spread of COVID-19.

18. The County is in a crisis and desperately needs workers to fill its positions, especially experienced and dedicated workers like Plaintiff in this lawsuit.

19. Plaintiff has dedicated her career to serving the citizens of Allegheny County. Plaintiff worked as a dental assistant. Plaintiff was wrongfully terminated on December 11, 2021.

20. As more particularly pleaded below, Defendants herein wrongfully and with willful and reckless indifference to Plaintiffs rights terminated her employment, which conduct was egregious and thus warrants an award of punitive damages.

21. In response to the Covid-19 vaccine mandate, Plaintiff told her employer about her Factor 5 blood clotting disorder and how she was afraid the vaccine, known to cause clotting, could cause her serious injury and/or death.

22. At no time did Defendant ever engage in any meaningful interactive process with Plaintiff to determine whether there existed any reasonable accommodations for her medical condition. It is believed and therefore averred that the Defendant never had any intention of granting Plaintiff's medical exemption. Rather, the Defendant's intention was to deny all or as many exemptions as possible and force all of its workforce to be vaccinated. Defendant simply manufactured a sham exemption procedure , pretended to listen at Plaintiff's Loudermill hearing then sent a template, fill-in the blank letter denying her exemption.

23. It is believed and therefore averred that Defendant had supplied Plaintiff with reasonable accommodations in the form of personal protection equipment, social distancing and/or sanitizing throughout the pandemic. In addition, weekly testing was required. These reasonable accommodations suddenly became an undue hardship when the vaccine mandate was

put into place on December 1, 2021. Defendant does not require visitors in its facility to be vaccinated.

24.     Respondent was allowed to continue to work until December 11, 2021. On that day, Defendant informed Plaintiff that she was immediately terminated. Her termination was solely due to her unvaccinated status. Defendant perceived Plaintiff as disabled due to her unvaccinated status. Defendant failed to respond to her request for a medical exemption due to her clotting history.

25.     Plaintiff offered to continue to use the reasonable accommodations listed above in lieu of getting the Covid 19 vaccine. Defendant ignored these requests and Plaintiff was terminated.

26.     Defendant's sole reason given for denying Plaintiff's medical exemption was it would create an undue hardship on Allegheny County. At no time did Defendant, Allegheny County, ever explain the reasons granting a medical exemption was an undue hardship. It is believed and therefore averred, that Defendant never even had a doctor review Plaintiff's request for medical exemption for her clotting concerns.

27.     It is believed and therefore averred, that Defendant engaged in a policy of a blanket denial of all requests for medical exemptions and instead claiming undue hardship as Defendant's goal was to seek 100% vaccination of all its employees and to purge its payroll of the unvaccinated for Defendant's financial gain.

28.     Plaintiff requested that the wearing of a mask and his or her consent to submit to Covid-19 testing at any time, be approved as a reasonable accommodation to receiving the Covid-

19 vaccines because of her medical condition precluding the imposition of the vaccines.

29. The aforesaid accommodations were reasonable because, *inter alia,* the OSHA rules regarding workplace vaccine mandates provided those precise accommodations for employees whose sincerely held religious beliefs precluding imposition of Covid-19 vaccination. *See* 29 C.F.R. §§1910.501(g);and 1910.501(1)(1) *See also* 86 Fed. Reg. No. 212 at 61552-53 (Nov. 5, 2021)(noting wearing face covering and/or testing is acceptable accommodation as matter of law); *id.,* at 61553 (noting testing acceptable accommodation for religious objection as matter of law).

30. Despite Plaintiff's request for accommodation of her medical condition, Defendant refused to accommodate Plaintiff.

31. Defendant failed to engage in the interactive process with Plaintiff.

32. Defendant did not offer an alternative accommodation to Plaintiff's requests other than discharge.

33. Rather, in a form letter, Defendant simply fired Plaintiff because the accommodation would cause an undue hardship.

## COUNT I
### (Fourteenth Amendment - Equal Protection Clause)

34. Plaintiff incorporates all the previous paragraphs herein.

35. By their actions, as described herein, Defendants, acting under color of statute, ordinance, regulation, custom, or usage, subjected Plaintiff to the deprivation of the rights, privileges, or immunities secured by the United States Constitution and Commonwealth of Pennsylvania Constitution.

36. The Fitzgerald Mandate violates the Equal Protection Clause of the Fourteenth

Amendment to the United States Constitution (and the corresponding provision of the Commonwealth of Pennsylvania Constitution) because it discriminates against unvaccinated people who need to exercise their fundamental rights to refuse experimental vaccines that conflict with their pre-existing medical conditions.

37. There is no rational basis for this discrimination. Plaintiff poses no more danger to others than a person who is vaccinated. Both groups are equally able to spread Covid-19. When the mandate went into effect, it was already well known and published that vaccinated people were more likely to contract or transmit Covid-19.

38. The policy of discriminating based on an individual's willingness or ability to give up their health and safety shocks the conscience. It cannot be justified as relating to any rational, permissible goal. It is not grounded in science but rather in the effort to coerce people into waiving their protected rights.

39. Due to the discriminatory regulation, Plaintiff faced the loss of his employment, ability to practice his vocation, contractual rights, and violation of civil rights and liberties.

40. Moreover, the policies adopted by the County facially discriminate against Plaintiff based on refusing to afford accommodations.

41. The acts or omissions of Defendants were conducted within the scope of their official duties and employment under the color of law.

42. While performing those duties, Defendants intentionally deprived Plaintiff of securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and the Commonwealth of Pennsylvania by arbitrarily discriminating against him based on religious beliefs.

WHEREFORE, Plaintiff asks the Court to declare that the Fitzgerald Mandate is invalid

on its face and as applied to the Plaintiff because it violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and to order the County to restore Plaintiff to his County employment with back pay, lost wages, medical expenses, interest, restoration of time in service and seniority, and to award actual, consequential, compensatory, pecuniary, and punitive damages to Plaintiff, and costs related to commencing and prosecuting this action, and any other relief this Court deems fair and equitable.

## COUNT II
### (Violation of Fourteenth Amendment - Deprivation of Due Process)

43. Plaintiff incorporates all the previous paragraphs herein.

44. By their actions, as described herein, Defendants, acting under color of statute, ordinance, regulation, custom, or usage, subjected Plaintiff to the deprivation of the rights, privileges, or immunities secured by the United States Constitution and Commonwealth of Pennsylvania Constitution.

45. The Constitutional right of procedural due process provided in the Fourteenth Amendment encompasses the right to notice, an opportunity to be heard, and a fair, unbiased decision sufficient to adequately protect the rights at stake.

46. The Fitzgerald Mandate, both facially and as applied, denied Plaintiff a meaningful right to be heard.

47. No notice was given to articulate the reasons that applications for accommodations were denied. Instead, arbitrary and capricious autogenerated notices were provided that failed to individually assess each applicant or provide a meaningful evaluation of their request for medical accommodation.

48. The decision-makers were inherently biased and conflicted. Given the property

9

interests at stake, the process was woefully inadequate.

49. The Fitzgerald Mandate set no lawful standards by which the Plaintiff could compare the decisions made with respect to his individual exemption applications. On the contrary, the Fitzgerald Mandate permitted the Defendants to make decisions in Plaintiffs case without any procedural protections, without the right to rebuttal to the Defendants' input, and without applying rational standards.

50. For these reasons, the Fitzgerald Mandate, as applied, rendered the medical accommodation process unconstitutionally vague and in contravention of the procedural due process clause of the Fourteenth Amendment.

WHEREFORE, Plaintiff asks the Court to declare that the Fitzgerald Mandate is facially invalid and as applied because it is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and to order the County to restore Plaintiff to his county employment with back pay, lost wages, medical expenses, interest, restoration of time in service and seniority, and to award actual, consequential, compensatory, pecuniary, and punitive damages to Plaintiff, and costs related to commencing and prosecuting this action, and any other relief this Court deems fair and equitable.

## COUNT III

### (Fourteenth Amendment- Substantive Due Process)

51. Plaintiff incorporates all the previous paragraphs herein.

52. By their actions, as described herein, Defendants, acting under color of statute, ordinance, regulation, custom, or usage, subjected Plaintiff to the deprivation of the rights, privileges, or immunities secured by the United States Constitution and Commonwealth of Pennsylvania Constitution.

53.     The Supreme Court has recognized that the Fourteenth Amendment protects individuals' privacy rights. A "forcible injection ... into a nonconsenting person's body represents a substantial interference with that person's liberty." <u>Washington v. Harper,</u> 494 U.S. 210, 229 (1990).

54.     Forcing Plaintiff to get an injection for a virus that presents a near-zero risk of death or illness to him and which does not prevent transmission to others violates the liberty and privacy interests of the Fourteenth Amendment.

55.     As well, or in the alternative, this right to refuse experimental medicine is secured by the Due Process Clause of the United States Constitution and corresponding provisions in the Commonwealth of Pennsylvania Constitution and by the laws and regulations of the Commonwealth of Pennsylvania, to be free from burdens on rights deemed "fundamental" in nature.

56.     All of the COVID injections are still experimental. They were rushed to market in a matter of months, skipping years of the normally required testing process.

57.     The only available vaccines in this country are available under Emergency Use Authorization, which forbids compulsory mandates.

58.     The FDA has approved one vaccine - Pfizer's "Comirnaty" vaccine -but Comirnaty is not available in Pennsylvania, rendering this fact meaningless for all operative purposes. In fact, Comirnaty received a biological license for one (1) day. Even if Comirnaty was available or other vaccines were licensed, these vaccines are all still undergoing clinical trials and are blatantly experimental. Defendants will be unable to produce a single employee in Allegheny County who received any vaccine that was not under EUA status only.

59.     Under international, national, state, and local laws, experimental medical products cannot be mandated.

60. All vaccines, including these, can cause harm to some people. People with natural immunity face a greater risk of harm from COVID-19 vaccines, as do certain demographic groups represented in this class - including men under twenty-five and people with certain pre- existing conditions.

61. Under the United States Constitution, people also have a fundamental right to refuse any medicine, whether it is experimental or not, even lifesaving medication.

62. Considering the serious rights at stake and the absence of evidence to show this policy is necessary or effective because the vaccinated can transmit disease and have inferior immunity to those who have caught the disease, there is no rational reason to mandate vaccines for County employees.

63. The Fitzgerald Mandate is not narrowly tailored to impose the least restrictive burdens on fundamental rights. Rather, it is intentionally tailored to create an excessive burden to coerce participation in experimental medicine for no apparent reason.

WHEREFORE, Plaintiff asks the Court to declare that the Fitzgerald Mandate is facially and as applied invalid because it violates the substantive due process rights of all County employees, as well as hybrid rights under the First and Fourteenth Amendments, to permanently enjoin their enforcement against employees asserting a sincere religious objection to vaccination, and to order the County to restore Plaintiff to their county employment with back pay, lost wages, medical expenses, interest, restoration of time in service and seniority, and to award actual, consequential, compensatory, pecuniary, and punitive damages to Plaintiff, and costs related to commencing and prosecuting this action, and any other relief this Court deems fair and equitable.

**COUNT IV**

**(Violation of Powers Under the Home Rule Charter)**

64. Plaintiff incorporates all the previous paragraphs herein.

65. Defendant County Executive Fitzgerald did not possess powers vested in him pursuant to the county's Home Rule Charter to issue the Fitzgerald Mandate.

66. Under the Home Rule Charter, the Fitzgerald Mandate, as a new ordinance, regulation, or employment policy requiring all County employees to receive the COVID-19 vaccine as a term and condition of employment, could only be passed by the County Council.

WHEREFORE, Plaintiff asks the Court to find that the Fitzgerald Mandate was *ultra vires* and void *ab initio* and to order the County to restore Plaintiff to his county employment with back pay, lost wages, medical expenses, interest, restoration of time in service, and seniority, and to award actual, consequential, compensatory, pecuniary, and punitive damages to Plaintiff, and costs related to commencing and prosecuting this action, and any other relief this Court deems fair and equitable.

## COUNT V

## ADA

67. The foregoing paragraphs are incorporated by reference as though the same were set forth more fully herein.

68. Defendant fired Plaintiff because Defendant perceived Plaintiff as disabled under the Americans with Disability Act. ("ADA").

69. Defendant submitted medical evidence from her treating doctor that she should not get the covid vaccine as it could cause significant health problems and/or death, rendering her medical condition a disability under the ADA.

70. Defendant failed to even engage in the interactive process to discuss Plaintiff's perceived

disability in violation of the ADA.

71. Plaintiff submitted evidence she had natural immunity against covid which Defendant completely ignored despite data that natural immunity was more effective than the vaccine.

72. The perceived disability in this case is Plaintiff's unvaccinated status.

73. In all other respects, Plaintiff was ready, willing and able to continue her employment with Defendant. It was only her perceived disability that caused Defendant to fire Plaintiff.

**WHEREFORE**, the Plaintiff requests the following:

a. That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of ADA and the Civil Rights Act of 1964.

b. That Defendant be ordered to reinstate Plaintiff and provide her accumulated seniority, fringe benefits and all other rights;

c. That Defendant be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest from the date of discrimination, in addition to reimbursement for lost pension, experience, training opportunities and other benefits;

d. That the Court award Plaintiff compensatory and punitive damages as a result of Defendant's violations of the ADA and the Civil Rights Act of 1964;

e. That Defendant be enjoined from discriminating against Plaintiff in any manner that violates ADA;

f. That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney fee; and

g. That the Court grants the Plaintiff additional relief as may be just and proper.

## COUNT VI
## MEDICAL DISCRIMINATION PURSUANT TO PHRA

74. The foregoing paragraphs are incorporated by reference as though the same were set forth more fully herein.

75. Plaintiff is a member of protected class pursuant to the PHRA, in that she had a serious clotting issue that was ignored by Defendant. Defendant failed to engage in any meaningful interactive process and failed to offer any reasonable accommodations.

76. At all times relevant hereto, Plaintiff satisfactorily performed all of his or her job duties.

77. Defendant terminated Plaintiff because of her pre-existing clotting issue when it failed to accommodate her disability resulting in the damages as set forth more fully hereinabove. In addition, Defendant perceived Plaintiff to be disabled because of her unvaccinated status.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in his her favor and direct Defendant to:

    a. Award Plaintiff compensatory damages, including lost wages, employment benefits, back pay, interest, reinstatement and any and all other pecuniary damages for violation of their rights and for the injuries they has suffered as a result of Defendant's conduct;

    b. Award Plaintiff pre-judgment and post-judgment interest;

    c. Award Plaintiff the costs of this action, including reasonable attorney's fees and reasonable expert witness fees; and

  d.  Award any such further relief as this Court may deem, just, proper and equitable and as permitted under 43 P.S. §951 *et seq.*

**COUNT VII**
**WRONGFUL DISCHARGE**
**VIOLATION OF PUBLIC POLICY**

  78.  The foregoing paragraphs are incorporated by reference as though the same were set forth more fully herein.

  79.  Defendants had a policy of vaccinate or terminate which was a sham attempt to comply with federal and state anti-discrimination laws, such as Title VII, the ADA and the PHRA.

  80.  Defendant's policy of vaccinate or terminate infringed upon Plaintiff's constitutionally protected rights under Title VII of the Civil Rights Act, the ADA and the Pennsylvania Human Relations Act.

  81.  Clear public policy against anti-discrimination is abundantly clear with both federal and state laws having agencies such as the EEOC and the PHRC which are charged with enforcing anti-discrimination laws.

  82.  Plaintiff was fired for exercising her right to personal, medical autonomy and a sincerely held belief that her pre-existing Factor 5 clotting disorder pre-disposed her to a significant risk of severe injury and/or death.

  83.  Despite the above, the Defendant's sham exemption process was an exercise in futility and was clearly designed to force people like Plaintiff to take unnecessary and unjustified risks to severe injury and/or death to satisfy Defendant's goal of complete vaccination.

  84.  Defendants knew, or in the exercise of reasonable diligence, should have known

that its sham exemption policy would force people to violate their own rights to medical and personal autonomy.

85.     Defendant had no legitimate business purpose or justification for dismissing Plaintiff, a 20+ year employee when there existed reasonable accommodations other than vaccination.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court enter judgment in her favor and direct Defendant to:

  a.  Award Plaintiff compensatory damages, including lost wages, employment benefits, back pay, interest, reinstatement and any and all other pecuniary damages for violation of their rights and for the injuries they has suffered as a result of Defendant's conduct;

  b.  Award Plaintiff pre-judgment and post-judgment interest;

  c.  Award Plaintiff the costs of this action, including reasonable attorney's fees and reasonable expert witness fees; and

  d.  Award any such further relief as this Court may deem, just, proper and equitable and as permitted by law.

Respectfully submitted,

The Welsh Law Group, LLC

_____
James L. Welsh, III
PA I.D. #58790
Counsel for Plaintiff

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Plaintiff

_____
James L. Welsh, III, Esquire
Attorney I.D. #58790

## ATTORNEY'S VERIFICATION

I, James L. Welsh, III, Esquire, certify that I am authorized to make this Verification and I have read the foregoing Complaint and verify that the statements therein are correct to the best of my personal knowledge, information and belief.

This Verification is made subject to the penalties of 18 Pa. C.S.S. §4904, relating to unsworn falsification to authorities, which provides that if I make knowingly false statements I may be subject to criminal penalties.

_____10/19/23_____                    _____
Date                                     James L. Welsh, III, Esquire